IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| LUIS OLMEDO CURCO AYALA,<br><br>Petitioner,<br><br>vs.<br><br>PAMELA BONDI, Attorney General; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; IMMIGRATION AND CUSTOMS ENFORCEMENT; DAREN K. MARGOLIN, Director for Executive Office for Immigration Review; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and DAVID EASTERWOOD, Acting Director, St. Paul Field Office Immigration and Customs Enforcement,<br><br>Respondents. | Case No. 0:26-cv-00960-SHL-SGE<br><br>**ORDER GRANTING VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

**I.    INTRODUCTION.**

Petitioner is a citizen of Ecuador who has been present in the United States since at least November 2024. Petitioner was arrested by officials with U.S. Immigration and Customs Enforcement ("ICE") on February 2, 2026. Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) without the opportunity for a bond hearing. For reasons set forth below, the Court disagrees and ORDERS that Petitioner be immediately released unless he has been transferred away from Minnesota, in which case he must be returned to Minnesota within twenty-four hours and then immediately released. Petitioner's Verified Petition for Writ of Habeas Corpus is GRANTED. (ECF 1.)

**II.    FINDINGS OF FACT.**

Petitioner is a citizen of Ecuador who entered the United States in early November 2024. (ECF 1, ¶ 39; ECF 5, p. 1.) On November 7, 2024, he was placed into removal proceedings pursuant to 8 U.S.C. § 1229a and released on recognizance pursuant to 8 U.S.C. § 1226(a). (ECF

1

1, ¶¶ 40–41; ECF 6-1, p. 1.) His Notice to Appear designates him as "an alien present in the United States who has not been admitted or paroled," as opposed to an "arriving alien." (ECF 6-1, p. 1.) According to the Notice to Appear, he is charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). (Id.) He alleges that there has been no change in circumstances that would allow him to be detained (ECF 1, ¶¶ 44–45), although the Respondents asserted, without further factual support, that "apparently, he violated the terms of his release" (ECF 5, p. 1). On February 2, 2026, ICE officers took him into custody when he appeared for a routine check-in appointment pursuant to his supervision order. (ECF 1, ¶ 43.) Petitioner alleges that his arrest was warrantless, but Respondents provide a warrant also dated February 2, which bears the Petitioner's signature on the Certificate of Service. (ECF 6-2, p. 1.) He filed his habeas petition the same day while in custody in Minnesota. (Id., ¶ 46.) He requests either immediate release or a bond hearing pursuant to 8 U.S.C. § 1226(a). (Id., p. 30.)

On February 2, 2026, the Court entered an Order to Show Cause requiring Respondents, among other things, to "certify[] the true cause and duration of Petitioner's detention in light of the issues raised in the habeas petition" and explain "[w]hether Petitioner was arrested pursuant to a warrant and, if so, [provide] a copy of such warrant." (ECF 3.) Respondents filed a response on February 5, 2026. (ECF 5.) Respondents do not ask for an evidentiary hearing. (Id., p. 15.) Instead, they argue as a matter of law that Petitioner is subject to mandatory detention as an "applicant for admission" pursuant to 8 U.S.C. § 1225(b)(2). (Id., pp. 2–7.)

### III. HABEAS CORPUS STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[he] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

## IV.     LEGAL ANALYSIS.

*A. Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b).*

Respondents argue that Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(a)(1) and (b)(2). Section 1225(a)(1) defines "applicant for admission" to mean "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). Detention of such an alien is mandatory pursuant to § 1225(b)(2)(A), subject only to "temporar[y] release[] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287–88 (2018) (quoting 8 U.S.C. § 1182). Petitioner by contrast, points out that federal officials have at all relevant times treated him as being governed by 8 U.S.C. § 1226(a), which—subject to certain exceptions not at issue here—makes detention discretionary for "aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289; *see also, e.g.*, *Hasan v. Crawford*, 800 F. Supp. 3d 641, 656 (E.D. Va. 2025).

> 1. Respondents' Interpretation of § 1225(b)(2) Is Overbroad and Untenable in Light of the Surrounding Statutory Context and the Circumstances of Petitioner's Removal Proceeding.

As a threshold matter, the Court rejects Respondents' argument that Petitioner is an "applicant for admission" merely because he "is in the country without valid legal status." *Brito Barrajas v. Noem*, No. 4:25-cv-00322, 2025 WL 2717650, at *4 (S.D. Iowa Sept. 23, 2025); *Hasan*, 800 F. Supp. 3d at 655–57. Such an interpretation of § 1225 would render substantial portions of § 1226 superfluous by making "detention [] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 800 F. Supp. 3d at 656. If this is what Congress intended, it does not make sense that it would have passed a separate provision as part of the same statutory scheme that specifically contemplates bond hearings except in enumerated situations. *See id.* It is especially difficult to square Respondents' interpretation of § 1225 with Congress's recent decision to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *Brito Barrajas*, 2025 WL 2717650, at *4; *Romero v. Hyde*, 795 F. Supp. 3d 271, 286 (D. Mass. 2025). Under Respondents' interpretation of the interplay between §§ 1225 and 1226, substantial portions of the Laken Riley Act are meaningless. This is not how statutes are to be interpreted. Indeed, "[o]ne of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no part will be inoperative or superfluous, void or

insignificant.'" *Hasan*, 800 F. Supp. 3d at 656 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

The fact that immigration officials have allowed Petitioner to be on release in the community since his arrival in the country in November 2024 reinforces the conclusion that he is not subject to mandatory detention under § 1225(b). *See, e.g.*, *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218–22 (D. Mass. 2025) (holding that petitioner was not subject to mandatory detention under § 1225(b) because immigration officials chose to release him into the country following an encounter at the border). In these circumstances, Petitioner is governed by § 1226(a) as an "alien[] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.

> 2. The Interpretive Problem That Has Been Raised in This Case—and Thousands of Others Across the Country—Could Be Solved if the Supreme Court Revisits What It Meant in *Jennings v. Rodriguez.*

Notwithstanding the Court's analysis in the preceding section, the interpretation of "applicants for admission" proposed by Respondents is plausible and non-frivolous. Indeed, if the Court were interpreting that phrase in a vacuum in which it looked at nothing other than § 1225(a), it likely would agree with Respondents' position. Respondents' position runs into major problems, however, when it is held up against: (i) the surrounding statutory language recognizing that aliens in removal proceedings are often not in custody; (ii) the longstanding conclusion of immigration officials in prior administrations that aliens who lack legal status are entitled to bond hearings under § 1226(a); and (iii) the Supreme Court's statement in *Jennings* that the bond provisions in § 1226(a) apply to "aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." 583 U.S. at 289. All three problems can be solved in one fell swoop if the Supreme Court clarifies what it meant in a different part of *Jennings* regarding the duration of mandatory detention under § 1225(b)(2). Specifically, if the Supreme Court concludes that detention is mandatory under § 1225(b)(2) only until an alien has a bond hearing with an immigration judge pursuant to § 1226(a), then the dissonance in the current state of affairs will largely go away. In other words, the Supreme Court simply needs to clarify that §§ 1225 and 1226 are not mutually exclusive.

In *Jennings*, the petitioner was a lawful permanent resident of the United States until being convicted of a drug offense and theft of a vehicle, which led immigration officials to initiate removal proceedings against him. *Id.* at 289–90. He was subject to mandatory detention during

4

these proceedings pursuant to § 1226(c). After losing his case at each stage in the immigration courts, the petitioner sought review in the United States Court of Appeals for the Ninth Circuit. *Id.* at 290. In the meantime, he filed a habeas petition—which later became a class action—in the Central District of California alleging that he was entitled to a bond hearing to determine whether ongoing detention was warranted. *Id.* The Ninth Circuit affirmed the entry of injunctive relief requiring the petitioner and other similarly situated individuals to have individualized bond hearings every six months. *Id.* at 291–92.

The Supreme Court reversed, concluding there was nothing in the language of § 1225(b)(1), § 1225(b)(2), or § 1226(c) that could be interpreted to "include an implicit 6-month time limit on the length of mandatory detention." *Id.* at 303–04. Specifically, *Jennings* concluded that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id.* at 302. As noted in the preceding section, *Jennings* interpreted § 1226(a) as "appl[ying] to aliens already present in the United States" and held that it creates a "default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond [except in enumerated circumstances]." *Id.* at 303.

*Jennings* has played a significant role in the thousands of immigration-related habeas cases that have been filed across the country in recent months. In those cases, senior Department of Justice and immigration officials like Respondents here have relied heavily on *Jennings*'s conclusion that detention is mandatory under § 1225(b)(2) for "applicants for admission" for the duration of their removal proceedings. Because, in the view of Respondents, the phrase "applicants for admission" is broad enough to capture most—if not all—of the aliens currently in the country without lawful status, Respondents have argued that those aliens are subject to mandatory detention from the moment they are arrested by ICE agents until their removal proceedings end. The habeas petitioners, by contrast, have relied on *Jennings*'s conclusion that § 1226(a) "applies to aliens already present in the United States." *Id.* The petitioners interpret this to mean that aliens who were not detained at the border upon their entry to the United States are not "applicants for admission" as defined in § 1225(a)(1), and thus are not subject to mandatory detention under § 1225(b). Most courts have agreed with petitioners, although a notable minority have not.

*Jennings* appears to foreclose what this Court believes is the most natural and logical way to interpret the interplay between §§ 1225 and 1226. But for *Jennings*, the Court would conclude that detention without the opportunity for bond is required only for aliens in expedited removal proceedings governed by § 1225(b)(1)(B)(iii) and/or who fall under one of the enumerated exceptions in § 1226(c). In all other cases—including, especially, cases like this one involving an alien who is arrested after already being in the country—the aliens are "applicants for admission" under § 1225(a)(1) **and** eligible for bond under § 1226(a).

The Court would reach this conclusion for two reasons. First, and most importantly, the statutory language supports it. As it relates to detention, there are conspicuous differences in word choice between aliens in expedited removal proceedings governed by § 1225(b)(1)(B)(iii) and those in non-expedited proceedings governed by § 1225(b)(2). For aliens in expedited removal proceedings, there is a section entitled "Mandatory Detention" that states: "Any alien subject to the procedures under this clause shall be detained **pending a final determination** of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV) (emphasis added). By contrast, for "applicants for admission" in non-expedited proceedings, there is no subsection entitled "Mandatory Detention." Instead, the detention language is found in a subsection entitled "In general" and states that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained **for a proceeding under section 1229a** of this title." *Id.* § 1225(b)(2)(A) (emphasis added).

The fact that aliens in expedited removal proceedings under § 1225(b)(1)(B)(iii)(IV) are subject to detention "pending a final determination" but aliens in non-expedited proceedings under § 1225(b)(2)(A) are merely "detained for a proceeding under section 1229a" is noteworthy. The language of the former subsection expressly says that detention is required for the entire duration of the proceeding. The language of the latter subsection does not. Moreover, § 1225(b)(2)(A) cross-references 8 U.S.C. § 1229a, which sets out the procedural requirements for removal proceedings. Section 1229a and its corollary, 8 U.S.C. § 1229, presume that aliens in removal proceedings often will not be in custody. For example, § 1229(a)(1)(F) requires aliens to provide an address and telephone number "at which the alien may be contacted respecting proceedings under section 1229a of this title," as well requiring the alien to update this information if it changes. Similarly, § 1229a(b)(5) explains the consequences for an alien who fails to appear for a removal

hearing. It would make little sense for Congress to have passed statutes acknowledging that aliens routinely will be out of custody at the time of their hearings and yet also, as Respondents argue, have intended for virtually all aliens in the country without lawful status to be subject to mandatory detention. It likewise makes little sense for Congress to have enacted § 1226(a)—which specifically contemplates bail—if most or all aliens in the country unlawfully are subject to mandatory detention without the opportunity for bail.

These problems go away if "applicants for admission" under § 1225(b)(2)(A) are entitled to bond hearings pursuant to § 1226(a). In other words, when § 1225(b)(2)(A) says "the alien shall be detained for a proceeding under section 1229a of this title," it simply means the alien must remain in custody until the removal proceeding is initiated, at which point the normal procedures associated with such a proceeding (including the right to a bond hearing under § 1226(a)) are given effect. Under this interpretation, the broad definition of "applicants for admission" in § 1225(a)(1) can live in harmony with §§ 1226(a), 1229, and 1229a, all of which anticipate that many aliens will not be in custody during their removal proceedings. Which is to say, an alien can be both an "applicant for admission" and entitled to a bond hearing.

This leads to the second reason for interpreting §§ 1225 and 1226 as entitling "applicants for admission" to bond hearings except in expedited proceedings: It explains why, until very recently, the longstanding practice was for aliens without legal status to have bond hearings even when they arguably fit within the definition of "applicants for admission" under § 1225(a)(1). It's not that immigration officials were "choosing" § 1226(a) over § 1225(b) or ignoring the Congressional directive for mandatory detention. Rather, it simply reflects the fact that the two statutes were meant to work in harmony. This interpretation also resolves Respondents' argument that immigration laws should not give more favorable treatment to aliens who avoided apprehension at the border than those who were immediately detained. It treats aliens in both categories the same.

Alas, the Court must follow Supreme Court precedent. To that end, the following sentence from *Jennings* is fatal to the Court's preferred interpretation of the relevant statutes: "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." 583 U.S. at 303. Based on this language—and no matter how much it might prefer to hold otherwise—the Court is forced into the muddled space where it must treat § 1225 and § 1226 as mutually exclusive. Either an alien is an "applicant for

7

admission" and therefore subject to mandatory detention until the end of the removal proceeding under § 1225(b)(2) or is *not* an "applicant for admission" and therefore is entitled to a bond hearing under § 1226(a). Here, Petitioner is in the latter category.

To the extent the Supreme Court revisits the issue, it may well clarify or narrow what it said in *Jennings* about the duration of mandatory detention under § 1225(b)(2). After all, the petitioner in *Jennings* was subject to mandatory detention under § 1226(c), not §§ 1225(b)(1) or (2). Moreover, the question was whether aliens who were in custody during removal proceedings were entitled to bond hearings every six months despite the lack of any statutory language saying so. In these circumstances, the sweeping statement about the duration of mandatory detention under § 1225(b)(2) was arguably dicta. In that regard, it is important that *Jennings* did not acknowledge, much less address, the incongruity between the many provisions of the INA that presume aliens in removal proceedings will be out of custody and the fact that the broad definition of "applicant for admission" under § 1225 arguably makes virtually every alien in the country without lawful status subject to mandatory detention. Similarly, *Jennings* did not involve immigration officials in a new administration changing longstanding interpretations of the INA in a way that causes aliens who previously were entitled to bail hearings to suddenly become subject to mandatory detention. Had *Jennings* been forced to wrestle with these issues, it may very well have concluded that detention is mandatory under § 1225(b)(2) only until removal proceedings begin, at which point § 1229, § 1229a, and § 1226(a) kick in and entitle the alien to a bond hearing unless § 1226(c) makes detention mandatory. In other words, the Supreme Court may have concluded that §§ 1225(b)(2) and 1226(a) can work in harmony, rather than being mutually exclusive. Such a conclusion would largely resolve the interpretive conundrum currently inundating Article III courts.

B. *Petitioner Is Entitled to Immediate Release.*

Because the Court has concluded that Petitioner is not an "applicant for admission" for whom detention is mandatory under § 1225(b)(2), the only remaining issue is what relief should be awarded. Petitioner asks the Court to order the Immigration Court to order immediate release or, in the alternative, to require Respondents to provide an individualized bond hearing pursuant to § 1226(a). The Court has the authority to do either one. *Demore*, 538 U.S. at 517 (recognizing that § 1226(e) "contains no explicit provision barring habeas review").

8

It would make little sense to order a bond hearing here because Petitioner has already been granted bond pursuant to § 1226(a). This occurred when immigration officials chose to release him on his own recognizance in November 2024 after initiating a removal proceeding. (ECF 1, ¶¶ 40–41; ECF 6-1, p. 1.) Respondents have not presented any evidence to indicate that Petitioner violated the terms of his bond. Instead, they simply attach an arrest warrant stating, generically, that there is evidence to "affirmatively indicate . . . that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law" and/or that "statements made voluntarily by the subject to an immigration officer . . . indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (ECF 6-2.) Nothing about this is new. Immigration officials opened removal proceedings in November 2024 precisely because they believed Petitioner lacked lawful status and is removable.

Granted, § 1226(b) states that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." Respondents do not argue, however, that the Attorney General is revoking Petitioner's bond pursuant to § 1226(b). This is presumably because the Board of Immigration Appeals and at least one federal appellate court have held that revocation under § 1226(b) is permitted only if there has been a change in circumstances. *See, e.g.*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) ("In *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981), the BIA recognized that 'where a previous bond determination has been made by an immigration judge, no change should be made … absent a change of circumstance.'"). In addition, many lower courts have held that the due process clause prohibits the Attorney General from "summarily revok[ing]" an alien's bond in the absence of changed circumstances. *See, e.g.*, *Iza v. Arnott*, No. 6:25-CV-3392-MDH, 2026 WL 67152, at *3–4 (W.D. Mo. Jan. 8, 2026); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Kerry-Juma v. Noem*, No. CV SAG-25-04000, 2025 WL 3537525, at *2 (D. Md. Dec. 10, 2025); *Bermeo Sicha v. Bernal*, No. 1:25-CV-00418-SDN, 2025 WL 2494530, at *6 (D. Me. Aug. 29, 2025), *appeal docketed*, No. 25-2062 (1st Cir. Nov. 3, 2025).

Here, the Court need not wade into the due process issue because, again, Respondents are not relying on § 1226(b) in the first place. Instead, they rely solely on § 1225(b) as the basis for Petitioner's arrest and detention. Because Petitioner is not governed by § 1225(b), Respondents' position fails. The Court therefore will order Petitioner's immediate release. *See Chaudhari v. Crawford*, No. 1:25-CV-1772 (LMB/IDD), 2025 WL 3896287, at *4 (E.D. Va. Oct. 23, 2025)

(ordering immediate release where "there is no indication in the record before this Court that Chaudhari's bond has been revoked under 8 U.S.C. § 1226(b)"), *appeal docketed* No. 25-7069 (9th Cir. Dec. 23, 2025).

## V. CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF 1) is GRANTED.
2. If Petitioner is in Minnesota, Respondents must immediately release him from custody. If Petitioner is not in Minnesota, Respondents must return him to Minnesota within twenty-four hours and then immediately release him from custody. Respondents shall release Petitioner with all of his personal effects, including but not limited to his purse/wallet, money, driver's license, immigration papers, passport, cell phones, and keys.
3. Within three days of the date of this Order, the Parties shall confirm that Petitioner has been released as required by this Order.

IT IS SO ORDERED.

Dated: February 6, 2026

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE